.THE STATE ex rel. MISSOURI STATE BOARD OF AGRICULTURE v. W. W. WOODS, Assessor of Boone County.— 296 S. W. 381..

Court en Banc, June 13, 1927.

1. **COUNTY ASSESSOR: Crop Reports: Classes.** The statute (Sec. 11942, R. S. 1919) requiring the county assessor to obtain for each farm assessed by him correct information concerning actual crop acreage and other essential agricultural and country life statistics does not divide the persons required to give the information into unconstitutional classes. Within the meaning and purposes of the act landowners and their tenants do not constitute separate and distinct classes.

2. ———: ———: **Penalties: Reciprocal.** Within the contemplation of the statute (Secs. 11942, 11943, R. S. 1919; Laws 1919, p. 110), considered in its entirety, the duty rests upon farmers to give the information concerning actual crop acreage and other essential agricultural and live-stock statistics required by it, and in the event they refuse to give the information it subjects them to prosecution; and it therefore does not afford to the county assessor the excuse that it holds him guilty of a misdemeanor if he fails or neglects to obtain the information, but imposes no penalties upon farmers who refuse to give him answers to the pertinent inquiries.

3. ———: ———: **Impossible Punishment: Concern of Assessor.** Whether the duty of the landowner is sufficiently defined in the statute to make his failure to give the information required by it a criminal offense, is of no concern of the county assessor, but is a question that will be determined when a criminal cause involving the question comes before the court. His duties are clearly defined and prescribed by it, and whether a landowner can be convicted for failure to give the required information, because, while the statute expressly says that any person who refuses to give the information shall be guilty of a misdemeanor, it does not specifically command landowners to answer the question propounded by the State Board of Agriculture, and nothing can be taken by implication and intendment, is a question which the county assessor cannot offer as an excuse for failure to perform his duty under the act, for he can acquit himself of all implications of failure to perform it by duly reporting the refusal and failure to answer of the landowner to whom the questions were propounded.

---

Corpus Juris-Cyc. References: **Agriculture,** 2 C. J., Section 2, p. 988, n. 9. **Constitutional Law,** 12 C. J., Section 177, p. 762, n. 63.

Mandamus.

PEREMPTORY WRIT AWARDED.

*North T. Gentry,* Attorney-General, for relator.

(1) In the interpretation of statutes, the occasion and necessity of the law, the mischief felt, and the object and the remedy in view

are to be considered. State ex rel. v. McQuillan, 246 Mo. 534; St. Louis v. Christian Brothers College, 257 Mo. 552; Stack v. General Baking Co., 283 Mo. 410, 412. (a) Statutes should be so construed as to sustain rather than ignore or defeat them, to give them operation instead of treating them as meaningless. Spicer v. Spicer, 249 Mo. 599. (b) While criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized to so interpret them as to defeat the obvious purpose of the Legislature. State v. Woodward, 182 Mo. 407; State v. Mauer, 255 Mo. 162; State v. Walker, 309 Mo. 108. (c) "Intent is the spirit which gives life to legislative enactment." Railway v. Gracey, 126 Mo. 472; 2 Lewis-Southerland on Statutory Construction, sec. 363; City of St. Louis v. Lane, 110 Mo. 258. (2) "It is also true that the police power of the State extends to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, and this includes the right to enact suitable regulations looking to the accomplishment of a public purpose and designed for the promotion of public interests." Morrison v. Morey, 146 Mo. 562; Tiedeman's Limitations on Police Power, sec. 1; Cooley's Const. Lim. p. 704. (3) "It is not for the courts to say whether a classification is wise or necessary. It is sufficient if any difference in situation or condition exists which affords a reasonable ground for the classification." Arnold v. Hanna, 290 S. W. 422. (4) The statute in question, while awkwardly worded, is sufficient to inform the court as well as officers acting thereunder, that it was the intention of the General Assembly that the assessor of each county should take the inquiry blanks furnished him by the county clerk, which had been previously approved by the State Board of Agriculture, and obtain approximately correct answers to questions therein. The statute goes farther and details the kind of information that the State Board of Agriculture shall ask for and that the assessor shall obtain, to-wit, "actual crop acreage and other essential agricultural and country life statistics." Evidently the General Assembly thought that the obtaining of such information and the dissemination thereof would be of value to the people of Missouri, just as Congress deemed the obtaining of such information from the various states and the dissemination thereof would be of value to the people of the United States. While it is true that this section of the statute does not make it the duty of the owner of the farms to give such information to the assessor, yet Section 11943 provides a penalty for any person refusing to give such information. Section 11943 makes it a misdemeanor for any person to refuse to give the information to the assessor which is required by Section 11942. So, whether the first section is complete in itself or not, does not matter; the legislative intent is fully expressed in the second section and that intent fully appears when both sections are taken

together.  This is sufficient.  (5)  The obtaining of the information is a reasonable exercise of the police power of the State.  It is a fact well known that farm conditions today are not as good as they should be, and this condition has been increasing year after year for several years past.  If true farm conditions can be obtained by the assessor, if the answers to the various questions will disclose the reason or reasons for depreciated prices and for the difficulty of making farming a success financially, then the General Assembly would be in a position to take advantage of such information and pass needed legislation.  Or, Congress could use such information to good advantage in the enactment of Federal statutes.  Whether such information was needed and would be of value to the Legislature or to the national Congress, was a question for the Legislature to decide and is not a judicial question.  The statute being a reasonable one, and no hardship resulting to any one by reason of its enactment, it should be held valid.

*George S. Starrett*, Prosecuting Attorney of Boone County, for respondent.

(1)  Section 11942, Revised Statutes 1919, is unconstitutional, in that it requires the assessor to obtain for each farm assessed by him approximately correct answers to the questions in such blank contained, but does not require the owner of the farm to answer such question.  In other words, the statute imposes a duty on the assessor to obtain the information called for in the inquiry blank furnished by the State Board of Agriculture, but imposes no duty on the land owner to give such information.  It is contended that it was the intention of the Legislature to require the landowner, if present when the assessor calls, to give such information, and that such intention is implied from the provisions of this statute.  It should be noted, however, that Section 11943 provides that any person who fails or refuses to give such information shall be deemed guilty of a misdemeanor.  In this situation, the enforcement of this statute against the landowner would be a criminal proceeding, wherein nothing could be taken by implication or intendment.  This statute, therefore, is ineffective as to the landowner, because it imposes no duty on him to give the information called for by such statute.  United States v. Mitchell, 58 Fed. 997.  (2)  Requiring the farmers to give such information, under penalty of a fine or jail sentence, is not within the reasonable police power of the State, and such a statute should be strictly construed.  "If remedial, it must be liberally construed in behalf of both respondents and appellant, while if it be a penal law it must be strictly construed against the respondents as the representatives of the State, and liberally construed in favor of appellant."

State v. Robinson, 253 Mo. 284; State v. Koock, 202 Mo. 235. (3) The next question presented is whether or not the statute can be enforced against the tenant, renter, lessee, manager or superintendent of a farm for refusal to give information called for by this statute. It is true that this statute imposes a duty on all such persons to give the required information in the absence of the landowner, but it does not require the landowner to give such information. In this situation the question presented is whether or not this statute is class legislation. No doubt is entertained about the power of the Legislature to classify objects of legislation, but it has no power to take a natural class of persons, split that class in two, designate the fractions as two classes, then pass different laws for the government of each. State v. Miksicek, 225 Mo. 575; State v. Julow, 129 Mo. 177. The Legislature has taken the farmers as a class, split this class in two, designated one fraction who live on rented land, and the other as the farmers who own their land, then enacted different rules for the government of each, by requiring the renter to give the information required by the statute, and not requiring such information from the farmer who owns his land. For this reason this statute is class legislation and is therefore void and cannot be enforced against anyone.

RAGLAND, J.—This is an original proceeding in mandamus brought by the State Board of Agriculture to compel the Assessor of Boone County to accept and receive from the county clerk of that county the inquiry blanks certified out by the board, and to obtain for each farm assessed by him approximately correct answers to each question in such blanks contained and then deliver such information to the county clerk, all as provided by Section 11942, Revised Statutes 1919. In his return to the alternative writ the respondent says that he declines to do the things therein commanded for two reasons:

"(1) Said section of the statute attempts to make it the duty of the assessor to obtain for each farm assessed by him approximately correct answers to each question in such blanks contained, but it does not make it the duty of the owners of farms assessed by him to give to the assessor correct answers to such questions or any information by which he can make proper answers to such questions in such blanks contained, and therefore he cannot deliver such information to the county clerk.

"(2) Said section is class legislation, and is an attempt on the part of the Legislature to take a natural class of persons, split that class in two, designate the fractions as two classes, then pass different laws for the government of each class; that by reason of said statute being unconstitutional, illegal and void, the respondent is not in duty bound to accept of such inquiry blanks, nor to

obtain approximately correct answers to each question in such blanks contained, nor to deliver such information to the county clerk.''

Section 11942 imposes certain mandatory duties upon two general classes: (1) designated public officials and (2) farm landowners, their tenants, etc. Its provisions as applicable to the first are as follows: (1) The State Board of Agriculture shall collect through the assessors information concerning the actual crop acreage and other essential agriculture and country life statistics, and disseminate same; (2) the secretary of the board shall annually certify the form of inquiry blank to the county clerks, or township clerks in counties under township organization; (3) such clerks or officers shall furnish blanks in conformity therewith to the assessors; (4) every assessor shall obtain for each farm assessed by him approximately correct answers to each question in such blanks; (5) the assessor shall deliver such information to the county or township clerk, or, if demanded, directly to the Secretary of the State Board of Agriculture; (6) complete statistics shall be furnished the said secretary in full within thirty days after the close of the annual assessment period; and (7) the board shall co-operate with the United States department of agriculture through the co-operative crop-reporting service of the State of Missouri. By Section 11943, any assessor, clerk or other officer, charged with any duty under the foregoing provisions, who fails, neglects or refuses to perform the same, or unduly delays such performance, shall be deemed guilty of a misdemeanor.

With respect to the second class, we find in Section 11942 this: ''Provided, a tenant, renter, lessee, manager or superintendent of farm land shall furnish the information required under this section in so far as possible in lieu of any absent landowner.'' And in said Section 11943: ''Any person refusing to give information required by the preceding section . . . shall be deemed guilty of a misdemeanor.'' The two sections constituted a single enactment. [Laws 1919, p. 110.] Neither, however, contains a specific command that the owner of farm land shall correctly answer the questions of the State Board of Agriculture propounded to him by the county assessor, at the time his land is assessed; nor is there in either an express statement that it shall be his duty to do so. Section 11942 is the statutory basis for the participation by the State in the co-operative crop-reporting service carried on under the auspices of the Federal Government. That service is organized and conducted primarily in the interest of the farmer and other producers of agricultural products. For it is now a truism ''that the fundamental problem of marketing can be solved only when the producers and their organized representatives have in their possession the actual acreage, approximate yields and quantities

of current crops, including live-stock production.'' The Legislature may have thought, therefore, that the farmers, through self-interest, would cheerfully contribute to the crop-reporting service without an imperative ''thou shalt'' on the part of the State. But be that as it may, it is beyond question that within the contemplation of the statute, considered in its entirety, the duty does rest upon them of giving the required information, and in the event they refuse to give it they are subject to prosecution. And there is no division into classes of the persons required to give the information. The proviso that in the absence of the landowner his tenant or superintendent shall give it, was evidently inserted for the convenience of the assessor and to save him in some instances an interminable quest. The duty resting upon the tenant, in the absence of the landlord, to answer the questions is no different from that resting upon the owner, when present. The ''any person'' in Section 11943 includes both.

It is contended by respondent that, though the Legislature manifestly intended to impose upon the landowners the duty just referred to, and though such duty on their part is clearly implied by the law, the enforcement of the statute as against them must fail, because in a criminal proceeding nothing can be taken by implication or intendment. Whether the duty of the landowner is sufficiently defined in order to make his failure or refusal to perform it a criminal offense, as the statute purports to do, will be determined by this court, or some other having the requisite jurisdiction, when a criminal cause involving that question comes before it. Whether the statute in that respect is effective, valid or constitutional is of no concern whatever to the county assessor. [State ex rel. v. Williams, 232 Mo. 56.] It is clearly valid as to him. His duties in the premises are clearly and definitely prescribed. When, if ever, a situation arises in which some landowner refuses to give him the information called for by the crop-reporting service of the State and National Governments, he can acquit himself of all implications of failure to discharge his own duty by duly reporting the fact in lieu of the information sought.

A peremptory writ is awarded. All concur, except *Atwood, J.*, absent.